UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHAEL GAMACHE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> IAM NATIONAL PENSION FUND, ) <br> ) <br> Defendant. ) <br> ) | Case No. 23-cv-1131 (APM) |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff Michael Gamache brings this action against Defendant IAM National Pension Fund (the "Fund") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Plaintiff alleges that the Fund wrongfully denied him disability pension benefits after an on-the-job injury.  The parties have cross-moved for summary judgment.  The court concludes that it cannot enter judgment fully in favor of either party on the record before it. Instead, as explained below, the court will deny the Fund's motion, grant in part and deny in part Plaintiff's motion, and remand to the Fund for further proceedings consistent with this opinion.

**II.   BACKGROUND**

  **A.   Factual Background**

   *1.   The Disability Pension Policy*

The Fund is a qualified "plan," "pension plan," and "multiemployer plan" within the meaning of ERISA.  *See* 29 U.S.C. § 1002(2), (3), (37); *see also* AR 159. [1]  It was set up to provide pension benefits for employees who are "represented for the purposes of collective bargaining" by

---

[1] The court refers to citations in the Administrative Record as "AR."  It is available in full at ECF No. 9.

a union affiliated with the International Association of Machinists and Aerospace Workers. AR 332.  The Fund is jointly administered by a Board of Trustees, which consists of an equal number of union and employer representatives.  AR 371.

This case concerns the terms under which the Fund will pay pension benefits due to disability.  Section 4.8 of the Fund's National Pension Plan Document (the "Plan"), entitled "Eligibility for a Disability Pension," provides that "[a] Covered Employee who has not attained age 65 shall be entitled to a Disability Pension if he becomes totally and permanently disabled." AR 223.  There is no dispute that Plaintiff is a "Covered Employee."

To establish total and permanent disability, a Covered Employee must make a two-part showing.  First, the employee must demonstrate that he is "unable, as a result of bodily injury or disease, to engage in or perform the normal and customary duties of his occupation or any similar or related occupation for renumeration or profit[.]"  *Id.*  Second, the employee must establish that "such disability will be permanent and continuous for the remainder of his life."  *Id.*  Whether an employee is "permanently and totally disabled within the meaning of [the] Plan" rests in the "sole and absolute discretion" of the Fund's Trustees.  *Id.*[2]  Further, "[t]he Trustees have the sole and absolute authority, in [their] discretion, to interpret [the] Plan and to determine eligibility for benefits under [the] Plan."  AR 271.

2.    *Plaintiff's Injury and Early Medical Treatment*

Plaintiff was hired as a maintenance mechanic for the United Parcel Service in March 1998. AR 61, 143. The job required Plaintiff to, among other things, "[l]ift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and "[w]ork at elevated heights, in enclosed spaces and [on] uneven walk surfaces."  AR 96.

---

[2] The Plan uses "totally and permanently disabled" and "permanently and totally disabled" interchangeably in the section defining eligibility for a disability pension.  *See* AR 223.

2

On February 5, 2020, Plaintiff suffered a workplace injury when he jumped off a conveyor belt and sprained his right ankle.  AR 2, 28.  Thereafter, Plaintiff went to the emergency room, "where he had radiology testing performed of the right ankle, was treated, provided with a splint and crutches and released the same day."  AR 28.  Months later, on June 22, 2020, Dr. Kevin Scott, an orthopedic surgeon, diagnosed Plaintiff with an anterior talar ligament tear on his right ankle.  AR 2.  In August 2020, Plaintiff underwent an ankle arthroscopy and lateral ankle reconstruction surgery performed by Dr. Kevin Rosas.  *Id.*, AR 49.  He then attended physical therapy at LaMarco Physical Therapy from September 22, 2020, until March 16, 2021.  AR 16.

Plaintiff was periodically reevaluated by these doctors and facilities.  Dr. Scott examined Plaintiff on November 30, 2020.  *See* AR 2.  At that time, Plaintiff reported being unable to "kneel, squat, run, jump, stand on his [toes] or climb ladders since the accident."  AR 3.  Dr. Scott reported at that time that Plaintiff "can only do a sedentary job with no bending, no prolonged standing and no climbing, jumping or running."  AR 4.  However, Dr. Scott found that Plaintiff's "prognosis for return to work is fair."  AR 5.

Dr. Rosas, Plaintiff's surgeon, saw him on December 2, 2020.  AR 49.  He noted that Plaintiff "was unable to return to work" but expected that there would be "some continued improvement over the next month to 2 months and [Plaintiff] may be able to return to work prior to a return visit."  *Id.*  Four months later, in March 2021, LaMarco Physical Therapy reported that Plaintiff "had 30 visits with good progress" but was "still having functional difficulty and weakness with isolated ankle motions," resulting in difficulty with "[s]quatting, kneeling, getting onto [the] floor, [and] walking on uneven ground."  AR 16; *see also* AR 17 (noting that Plaintiff "continues to demonstrate significant functional loss especially in terms of his occupation that requires full strength and stability on elevated levels, ladders, and in tight spaces").

On March 31, 2021, Plaintiff was examined by Dr. Adam Soyer, an orthopedic specialist hired by the New York State Workers' Compensation Board to conduct an independent medical assessment. AR 28–34. Dr. Soyer noted in an April 2021 report that Plaintiff was "not capable of regular duty work," but opined that he would "be able to return to pre-injury activities as a maintenance . . . mechanic in 06/2021." AR 31.

Dr. Rosas again evaluated Plaintiff in April 2021. He observed that Plaintiff continued to have ankle mobility limitations and recommended that he continue to work with physical therapy before pursuing further surgical options. AR 51–52. Dr. Rosas did not opine on Plaintiff's return to work at this time.

### 3.     *Plaintiff's Requests for Permanent Disability Benefits*

Plaintiff first applied to the Fund for permanent disability benefits in March 2021. AR 20–26. The Plan provides that "[t]he Trustees, in their sole and absolute discretion, may require or accept, as sole proof of total and permanent disability, the determination by the Social Security Administration that the employee is entitled to a Social Security Disability Benefit in connection with his Old Age and Survivors Insurance coverage." AR 223. The Fund thus requested that Plaintiff submit a Notice of Award letter from the Social Security Administration ("SSA") indicating the date he was deemed disabled by the agency. *See, e.g.,* AR 53–54. It made that request four times. *Id.*; AR 58–60. Plaintiff never provided an SSA letter, so the Fund denied his application, but advised that he could reapply when he had secured the requested documentation. AR 62.

Plaintiff again applied for a disability pension in November 2021. AR 65–72. As part of the second application, Plaintiff submitted a determination letter from the SSA, dated December 31, 2021. *See* AR 73–76. The SSA found that Plaintiff did *not* qualify for Social Security benefits,

4

as he was not disabled under the SSA's rules. AR 73. Those rules required that a disability (1) "keep [the applicant] from doing any kind of substantial work," *i.e.,* "physical or mental work a person is paid to do," and that the disability (2) "last, or be expected to last, at least 12 months in a row, or result in death." *Id.* The SSA explained that Plaintiff's ankle injury was not "of a nature that would prevent [him] from working," but recognized that "at present [he] was unable to perform certain kinds of work." AR 76. Based on his age, education, and experience, the SSA concluded that Plaintiff could "perform light work," such as "lift[ing] a maximum of 20 lbs., with frequent lifting or carrying of objects up to 10 lbs, or walk or stand for much of the working day[.]" *Id.* The SSA did not, however, specify the types of jobs for which Plaintiff would qualify. It did not "have sufficient vocational information to determine whether [Plaintiff could] perform any of [his] past relevant work," but determined that he could "adjust to other work." *Id.*

The Fund denied Plaintiff's second application for a disability pension, albeit for an admittedly erroneous reason. Under the Plan, a Covered Employee is eligible for a disability pension if "he becomes totally and permanently disabled . . . while in Covered Employment or within 12 months after leaving Covered Employment." AR 223; *see also* AR 77. In a letter dated February 2, 2022, the Fund mistakenly rejected Plaintiff's application on the grounds that he had not "become totally and permanently disabled within 12 months *after* leaving Covered Employment." AR 77–78. The Fund explained that Plaintiff's "application state[d] that [he] first became disabled in February 2020," but "[t]he Notice of Disapproved Claim of Social Security Disability Benefits" did not "*confirm[]* you were deemed totally and permanently disabled by the [SSA]" until December 2021. AR 78 (emphasis added). Of course, the explanation was not accurate. The SSA did not find Plaintiff permanently disabled, so whether he was deemed

permanently disabled more than 12 months after leaving Covered Employment was immaterial. Yet, the Fund inexplicably relied on timing to deny Plaintiff disability benefits.

4.   *Plaintiff's Administrative Appeal*

Plaintiff appealed the Fund's denial on March 10, 2022, arguing that his disability fell within the timeline required by the Plan. AR 79. The Fund let Plaintiff know that the appeal would be heard by the Fund's Appeals Committee in July 2022. AR 83. It also corrected the basis for the benefits denial. The Fund clarified that while "[t]he denial letter from the Fund . . . states that you were denied because you were not disabled within 12 months after leaving covered employment[,]" the actual reason was because the SSA had concluded that he was not disabled. *Id.* The Fund informed Plaintiff that it would refer his case to an "independent medical assessment agency" for a further look and requested medical records to that end. *Id.*

Plaintiff's file was thereafter reviewed by Dr. Stephen Broomes, a general practitioner hired by the Fund to opine on the extent of Plaintiff's disability. AR 89–92. Dr. Broomes reviewed various medical records supplied by Plaintiff, including Dr. Scott's November 2020 report, Dr. Rosas's December 2020 and April 2021 visitation notes, LaMarco's March 2021 evaluation, and Dr. Soyer's March and April 2021 reports. AR 89–90. Dr. Broomes concluded, based on these records, that Plaintiff was "not totally and permanently disabled from performing his job as a Maintenance Mechanic." *Id.* His report reflects some reliance upon Dr. Soyer's finding, in April 2021, that Plaintiff could return to his pre-injury job activities in June 2021. AR 91. He also noted the absence of "progress notes available for review after" April 26, 2021. *Id.*

The Fund provided Dr. Broomes's findings to Plaintiff on May 2, 2022. AR 93. Plaintiff responded by expressing disagreement. AR 94–95. He pointed out places in his medical records that showed he had some level of disability restriction. *See* AR 94 (noting, among other things,

the SSA determination that Plaintiff could perform only "light work"). Plaintiff also sent the Fund a description of his essential job functions as a maintenance mechanic at United Parcel Service, and highlighted the job functions that he could no longer perform due to his injury. *See id.*; AR 96. Plaintiff also provided evidence of other medical conditions. AR 95, 97–102.

After Plaintiff's objections, Dr. Broomes conducted a second assessment of Plaintiff's file. AR 103–07. He "reviewed" "[t]he physical requirements of [Plaintiff's] job," as well as the new records Plaintiff had provided about his other medical conditions. AR 104–05. Dr. Broomes declined to change his mind, again citing the fact that "there were no progress notes available for review after" April 26, 2021. AR 105.

The Fund provided Plaintiff with Dr. Broomes's second assessment on May 31, 2022. AR 108. He once again contacted the Fund to express his disagreement. AR 132–33. In an email dated June 13, 2022, Plaintiff criticized Dr. Broomes's findings on various grounds, including: (1) Dr. Broomes had not conducted a physical examination of Plaintiff; and (2) the Fund had not provided Dr. Broomes with the SSA letter, which post-dated the final April 26, 2021 progress report referenced in both assessments. *Id.*

Plaintiff also submitted with this email updated medical records from June 2022 from Dr. Rosas and LaMarco Physical Therapy. *See* AR 134–40. The new medical records from Dr. Rosas indicated that no "further surgery" would "be helpful," and that Plaintiff "could be cleared to return to work for sedentary duties only," as Plaintiff would be unable "to return to the type of work he was doing before which was very physical and involves being on his feet for extended periods of time." AR 137. The LaMarco records were to similar effect. They indicated that Plaintiff "significantly regressed" and "continue[d] to demonstrate significant functional loss," and concluded that further "improvement is unlikely." AR 139. LaMarco also noted that

7

Plaintiff was "compromised in terms of mobility, function and safety" and was "not fit for any type of labor job on multiple surfaces due to severe risk." *Id.*

Plaintiff explained in his email to the Fund that he had supplied the recent medical records "to show the board members that [he] ha[d] not improved and cannot perform the duties of a Maintenance Mechanic." AR 133. Plaintiff added that that he "d[id] not expect [the Fund] to submit the new exams for review as they do not offer anything new," but he "want[ed] the board members to understand that [he] ha[d] not improved one single bit and [is] never going to improve." *Id.*

The Fund's Appeals Committee considered Plaintiff's claim in July 2022. *See* AR 109–13. The record before the Committee included a history of the claim and evidence related to the claim, including the SSA letter and Plaintiff's most recent medical records from June 2022. *See* AR 110–11. The Committee denied Plaintiff's appeal. In a letter dated August 1, 2022, the Committee advised Plaintiff that he was "not eligible to receive a Disability Pension." AR 144. As reason for the denial, the Fund cited the SSA letter and the "two findings from the third-party reviewer" (Dr. Broomes) that Plaintiff was "not totally and permanently disabled from performing [his] most recent job as a maintenance mechanic." AR 143–44.

After the appeal denial, Plaintiff retained counsel, who requested all documents related to Plaintiff's claim. *See* AR 145–48. The Fund responded only with a copy of the Plan and indicated that additional responses would follow. AR 152. Plaintiff's counsel followed up twice more by letter and once by phone regarding the requested documents, *see* AR 427–30, 434–37, 441–42, but the Fund never provided them until after this litigation had commenced.

B.   **Procedural History**

Plaintiff filed suit on April 24, 2023, under 29 U.S.C. § 1132(a)(1)(B). *See* Compl., ECF No. 1. After Plaintiff indicated that he did not anticipate seeking discovery, Joint Status Report, ECF No. 8, the parties cross-moved for summary judgment based on the administrative record before the Fund. *See generally* Def.'s Mot. for Summ. J., ECF No. 11 [hereinafter Def.'s Mot.]; Pl.'s Mot. for Summ. J. & Opp'n to Def.'s Mot., ECF No. 12 [hereinafter Pl.'s Mot.].

## III.   LEGAL STANDARD

ERISA provides that a participant or beneficiary of a covered plan may file suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). To determine "'the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under' § 1132(a)(1)(B)," the Supreme Court has instructed lower courts to turn to "principles of trust law." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 110–11 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 105, 111 (1989)). Those principles "require courts to review a denial of plan benefits 'under a *de novo* standard' unless the plan provides to the contrary." *Id.* (quoting *Firestone*, 489 U.S. at 115). A "plan provides to the contrary by granting 'the administrator or fiduciary *discretionary authority* to determine eligibility for benefits[.]'" *Id.* (quoting *Firestone*, 489 U.S. at 115) (emphasis in original). In that case, "a deferential standard of review" is "appropriate," *id.* (quoting *Firestone*, 489 U.S. at 111) (emphasis omitted), and "[t]his deferential standard is one of reasonableness." *Marcin v. Reliance Standard Life Ins. Co. (Marcin III)*, 861 F.3d 254, 262 (D.C. Cir. 2017) (citation omitted).

The Plan in this case provides that:

> The Trustees have the sole and absolute authority, in [their] discretion, to interpret this Plan and to determine eligibility for

9

> benefits under this Plan. As part of their discretionary powers, the Trustees shall be the sole judge of: (a) the standard of proof required in any case; (b) the application and interpretation of this Plan; [and] (c) the amount of or entitlement to a pension[.]

AR 271; *see also id.* 223 ("A Covered Employee shall be deemed permanently and totally disabled within the meaning of this Plan only if the Trustees, in their sole and absolute discretion" determine so "on the basis of medical evidence" and the requirements of the Plan). This language provides the necessary discretion for purposes of deferential judicial review. *See Anthony v. Int'l Ass'n of Machinists and Aerospace Workers Dist. Lodge 1*, 378 F. Supp. 3d 30, 37–38 (D.D.C. 2019) (applying deferential standard when presented with the same language); *see also Marcin III*, 861 F.3d at 262 (finding deferential review appropriate where a plan provided that "[t]he claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits" (citation and emphasis omitted)); *Foster v. Sedgwick Claims Mgmt. Servs., Inc.* 842 F.3d 721, 731–32 (D.C. Cir. 2016) (examining plan language and finding discretionary authority where plan documents made "it clear that [the administrator]—and [the administrator] alone—has the power to construe disputed terms of the plan and determine eligibility for benefits").[3]

The question before the court is thus whether the Fund's decision to deny Plaintiff a disability pension was reasonable. *See Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992). Reasonableness "depends in large measure on what [the] determination was and the stated reasons behind it." *Marcin v. Reliance Standard Life Ins. Co. (Marcin II)*, 138 F. Supp. 3d 14, 18 (D.D.C. 2015) (internal quotation marks omitted), *aff'd*, 861 F.3d at 254; *see also Black &*

---

[3] Notwithstanding the Plan's plain language, Plaintiff argues that *de novo* review is appropriate here because the Fund did not timely provide his counsel the records he had requested, in violation of the Fund's obligations under a Department of Labor regulation, 29 C.F.R. § 2560.503-1(j)(3). Pl.'s Mot. at 16–19. The court does not reach this issue because, as explained below, the Fund's decision-making does not pass muster even under the more deferential standard of review.

10

*Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (a plan administrator must provide a "full and fair assessment of claims and clear communication" to the claimant of the "specific reasons for benefit denials" (internal quotation marks omitted)).  "Accordingly, [an administrator's] denial of benefits will not be overturned if it was the result of a deliberate and reasoned process and if it is supported by 'substantial evidence,' which is 'more than a scintilla but less than a preponderance.'" *Marcin III*, 861 F.3d at 262 (quoting *Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 475 (D.C. Cir. 1998)).  The court's review is limited to the evidence presented to plan administrators at the time of decision.  *See Block*, 952 F.2d at 1455.

## IV. DISCUSSION

To secure disability pension benefits, Plaintiff had to show that he was "totally and permanently disabled." *See Marcin III*, 861 F.3d at 263 (placing the burden on the applicant to demonstrate benefits eligibility).  Recall, the Plan defines "permanently and totally disabled" to mean that the employee "is unable . . . to engage in or perform the normal and customary duties of his occupation or any similar or related occupation for renumeration or profit" and that "such disability will be permanent and continuous for the remainder of his life." AR 223.  In finding that Plaintiff had not carried his burden, the Fund relied largely on the SSA letter and the "two findings from the third-party reviewer," Dr. Broomes.  AR 143–44.  If those two pieces of evidence were the full extent of the information before the Fund, the court's task arguably would be a simple one.  After all, the SSA itself determined that Plaintiff was not fully disabled and that he could perform at least "light work." AR 76.

But the record evidence includes more.  In June 2022, Plaintiff turned over recent medical records in response to Dr. Broomes's second assessment.  *See* AR 132.  Those medical records reflected the deteriorating condition of Plaintiff's ankle and his diminished prospects for resuming

11

employment as a maintenance mechanic. Dr. Rosas noted that Plaintiff's post-operative status was "[w]orsening" and that he "could be cleared to return to work for sedentary duties only." AR 137. His physical therapist at LaMarco similarly observed that Plaintiff had "significantly regressed" and that "[f]uture improvement is unlikely due to [Plaintiff] now being 22 months post op." AR 139. Plaintiff highlighted the importance of these records when he submitted them. He told the Fund that he had offered the records "to show the board members that I have not improved and cannot perform the duties of a Maintenance Mechanic." AR 133. He added that, even though he did not "expect [the Fund] to submit the new exams for review as they do not offer anything new," he produced them so that "the board members [would] understand that [he had] not improved one single bit and [is] never going to improve." *Id.*[4]

The Appeals Committee unquestionably had this evidence before it. A summary memorandum prepared for the Committee regarding Plaintiff's appeal makes this clear. It states that Plaintiff had contacted the Fund Office on June 13, 2022, and had "included updated medical exams (*copies attached*)." AR 111 (emphasis added).

The Fund had a duty on appeal to review *all* relevant evidence presented by Plaintiff when assessing his claim for benefits. 29 C.F.R. § 2560.503-1(h)(2)(iv) (stating that an appeal from an adverse benefits determination must "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without

---

[4] The Fund repeatedly faults Plaintiff for stating in his email that the 2022 records "do not offer anything new." *See, e.g.,* Def.'s Reply in Supp. of Def.'s Mot., ECF No. 14, at 2–3, 8, 16, 19, 22. The court does not find this argument compelling to the extent that the Fund argues Plaintiff's characterization of his evidence relieved the Fund of any duty to consider it. This statement must be read in context—Plaintiff made clear in the same email that "[t]he new exams are to show the board members that I have not improved and cannot perform the duties of a Maintenance Mechanic" and that he wanted "to make certain that all evidence is submitted properly to the board." AR 133. A full and fair review required the Appeals Committee to consider these new records alongside all other evidence, even if Plaintiff did not specifically request that they be submitted to Dr. Broomes.

regard to whether such information was submitted or considered in the initial benefit determination"). Yet, the court cannot say on this record whether the Appeals Committee ever considered the June 2022 records. The sole source of the Appeals Committee's rationale for its decision—the denial letter—makes no mention of these important records at all. AR 143–44. The Committee did explicitly reference Plaintiffs' earlier medical records reviewed by Dr. Broomes but not those from June 2022. AR 143 (citing medical records "submitted" on April 25, 2022, and May 10, 2022). The Fund now suggests that the Appeals Committee *did* in fact consider these records, but it credited Dr. Broomes's findings instead. Def.'s Reply in Supp. of Def.'s Mot., ECF No. 14, at 16–17. But there is no record evidence that the Appeals Committee ever exercised such judgment. Even under a relaxed reasonableness review, "it is important for the plan to provide a final, fully considered, and reasoned explanation for the court to evaluate." *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 433 (D.C. Cir. 1994). The Fund in this case failed to do so.

The court therefore holds that the Fund's denial of benefits was not reasonable insofar as the Fund has not shown that it considered all relevant evidence before it. "Where, as here, a plan administrator has failed to make adequate findings or explain adequately the grounds of its decision, remand to the plan administrator for reconsideration is the appropriate remedy." *Marcin v. Reliance Standard Life Ins. Co. (Marcin I),* 895 F. Supp. 2d 105, 123 (D.D.C. 2012) (quoting *Doe v. Mamsi Life and Health Ins. Co.,* 471 F. Supp. 2d 139, 149 (D.D.C. 2007)) (cleaned up); *see also Biliter v. United Mine Workers of Am. 1950 Pension Tr.*, 712 F.2d 1480, 1485 (D.C. Cir. 1983) (remanding to trustees of pension fund to address in first instance unconsidered claim-eligibility requirement); *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1315 (10th Cir. 2023) (stating that remand is the appropriate remedy if the plan administrator "failed to make

adequate factual findings or failed to adequately explain the grounds for the decision" (internal quotation marks and citation omitted)). Accordingly, the court remands this case to the Fund to (1) take account of the medical records submitted by Plaintiff in June 2022; (2) consider whether this medical evidence establishes that Plaintiff is "totally and permanently disabled" within the meaning of the Plan; and (3) adequately explain whether Plaintiff qualifies for disability pension benefits. *See* 29 C.F.R. § 2560.503-1(h)(2)(iv), (j)(1).

*    *    *

Before concluding, the court wishes to make clear that it expresses no opinion as to whether Plaintiff has carried his burden to show that he is "totally and permanently disabled." *See Marcin III*, 861 F.3d at 263. That is for the Fund to determine in the first instance. The court observes, however, that the June 2022 records provide at least some evidence that Plaintiff cannot "engage in or perform the normal and customary duties of his occupation" as a maintenance mechanic. *Compare* AR 137 (Dr. Rosas stating that he did not "think [Plaintiff] [would] be able to return to the type of work he was doing before which was very physical and involve[d] being on his feet for extended periods of time"), *and* AR 139 (LaMarco therapist noting that Plaintiff "is compromised in terms of mobility, function and safety" and "is not fit for any type of labor job on multiple surfaces due to severe risk"), *with* AR 96 (job description of a maintenance mechanic, requiring, among other things, "[l]ift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and "[w]ork at elevated heights, in enclosed spaces and uneven walk surfaces"). Those records also may have a bearing on whether Plaintiff can perform such duties in a "similar or related occupation." The Plan does not define that concept, and the Appeals Committee did not expressly make such a determination. *See* AR 143–44.

Further, the court takes no position on the merits of Plaintiff's various claimed procedural errors during his review process, or whether it would be appropriate to supplement the record on

remand with additional evidence. The court leaves to the Fund in the first instance whether to (1) refer the June 2022 medical records to Dr. Broomes for further evaluation, *see* Pl.'s Mot. at 25; (2) submit Plaintiff's files for review by an orthopedic specialist, *see id.*; or (3) undertake a vocational investigation, *id.* at 28–30. *Compare Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) ("Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim . . . ."), *with Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1229 (10th Cir. 2021) (stating that "remand is not appropriate to provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record").

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 11, is denied. Plaintiff's Motion for Summary Judgment, ECF No. 12, is granted in part and denied in part. It is granted insofar as the court vacates the Fund's denial of Plaintiff's application for disability pension benefits. It is denied insofar as Plaintiff asks the court to enter judgment in his favor and award him monetary and injunctive relief. This matter is hereby remanded to the Fund for reconsideration of Plaintiff's claim consistent with this Memorandum Opinion.

A separate order accompanies this Memorandum Opinion.

Dated: February 24, 2025

Amit P. Mehta
United States District Court Judge